## HURLEY GASOLINE CO. v. JOHNSON OIL REF. CO.

No. 16433—Opinion Filed March 23, 1926.

Rehearing Denied May 11, 1926.

1. Sales—When Title Passes—Shipment F. O. B. Subject to Buyer's Inspection at Another Place.

Where the purchaser reserves the right of inspection at another point than the place of shipment, the articles to be shipped f. o. b. at the latter place, the title to the subject-matter passes only conditionally on delivery to the carrier, and is subject to the buyer's right to reject the merchandise if it does not conform to the contract.

2. Sales—Sale by Described Qualities of Article not Yet Existing—Compliance as to Qualities a Condition and not a Warranty.

When the subject-matter of a sale is not in existence or not ascertained at the time of the contract, an undertaking that it shall, when existing or ascertained, possess certain qualities, is not a mere warranty, but a condition, the performance of which is precedent to any obligation upon the vendee under the contract, because the existence of those qualities, being part of the description of the thing sold, becomes essential to its identity, and the vendee cannot be obliged to receive and pay for a thing different from that for which he contracted.

3. Same—Noncompliance with Description by Seller—Remedies of Buyer.

Where an article is sold according to a particular description, and the thing delivered is not according to description, it is a nonperformance of the contract upon the part of the seller, and if the buyer knows of the defect at the time performance is offered, he may refuse to accept the goods; insist on due performance, and sue for damage for nonperformance if further performance is not duly offered.

4. Same—Recovery of Damages.

Where defendant agrees to furnish gasoline of a certain grade at a stipulated price, and breaches his contract and refuses to furnish gasoline of the contract grade or quality, and the plaintiff is required to and does purchase the quantity and quality of gasoline agreed to be furnished by defendant, the plaintiff is entitled to recover the difference between the contract price and the price he was actually compelled to pay for the gasoline in open market.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from Court of Common Pleas, Tulsa County; R. D. Hudson, Judge.

Action by the Johnson Oil Refining Company against the Hurley Gasoline Company to recover the difference in price of gasoline between that agreed on by the parties and the price paid in open market. Judgment for plaintiff, and defendant appeals. Affirmed.

Arden E. Ross, for plaintiff in error.

A. K. Swan, for defendant in error.

Opinion by RUTH, C. Parties will be here referred to as they appeared in the trial court.

The plaintiff placed the following order with defendant:

"5 tank cars—78-82 gravity, water white, sweet odor, absorption gasoline, 350 end

point or lower, 10 lbs. vapor tension or under 85-90 recovery."

"Price 11½ per gallon f. o. b. group 3 Okla. Terms 1%-10 days."

"Outage, color and gravity guaranteed at destination."

The destination was Waiverly Oil Works, Pittsburgh, Pa. This order was accepted by defendant under the terms of the order. Plaintiff alleges defendant delivered two cars according to contract, but failed to deliver the balance of the order, being three tank cars, but did deliver three cars of gasoline of a different character from that specified in the order; that plaintiff refused to accept the same and demanded gasoline of the character ordered; that the defendant took the three tank cars and disposed of the gasoline according to contract, and plaintiff was compelled to and did purchase three tank cars of gasoline of the required grade; that between the time of ordering from defendant and the time of the purchase elsewhere of the three cars by plaintiff, there was a difference or raise in price, and plaintiff was compelled to and did pay 2¼ cents per gallon more for the gasoline than the contract called for, amounting to $562.50 on the three cars, for which sum plaintiff prays judgment.

It appears from the record, though not in plaintiff's petition, that plaintiff, for the purpose of getting one per cent. off, paid for all five cars of gasoline within ten days from shipment from "group 3 Oklahoma," and while the cars were in transit, and when plaintiff refused to accept the three cars of off color, or "yellow" gasoline, it demanded and received repayment on the three cars; and defendant, answering, says all the gasoline was according to agreement, and plaintiff received and paid for same and afterwards rescinded the contract as to the three cars, and defendant repaid plaintiff $2,708.37, which plaintiff accepted in full settlement as to all differences arising between these parties, and the claim has been fully settled and paid.

A jury was waived and the cause tried to the court, and the court found from the evidence that the gasoline in the three tank cars in controversy was not of the grade provided for in the contract; that the plaintiff did not intend to effect a rescission of the contract, but requested its fulfillment and waited a reasonable time for defendant to comply with the request, and upon being notified of the defendant's refusal to comply with the terms of the contract, plaintiff purchased three cars of gasoline in open market, and was compelled to and did pay two cents more per gallon than the contract with defendant called for, and the court rendered judgment in favor of the plaintiff in the sum of $480, and the defendant appeals and presents its appeal under five propositions, which will be considered in their order. Defendant first contends that:

"The court erred in its finding of fact that the destination, instead of group 3 Oklahoma, was the place of delivery, and its further finding of fact that plaintiff had paid the purchase price of the gasoline in advance, and thereby further erred in its conclusion of law that the delivery of gasoline of a different quality than that contracted for in legal effect constituted nondelivery.' "

In this contention we cannot concur. It is conceded that delivery was to be at group 3 Oklahoma and we are in accord with the rule that:

"Ordinarily, a delivery of merchandise to a carrier is a delivery to the consignee, unless there has been an agreement to the contrary, or circumstances showing an intention of the parties to be otherwise." Pabst Brewing Co. v. Smith, 39 Okla. 403, 135 Pac. 381, 23 R. C. L. Sales, 248, 308, 316, and this rule is fortified by the citation of numerous authorities in defendant's brief.

The rule presupposes, however, that the delivery is completed, "that the goods are of the kind and quality ordered" (35 Cyc 317), and this is particularly true where the goods purchased are not manufactured and are unascertained and unidentified at the time of making the contract or delivery to the carrier. If the goods in this case had been lost or destroyed in transit, the rule would apply, but in the instant case, outage, color and gravity were guaranteed by defendant at point of destination, which was at Waiverly Oil Works, Pittsburgh, and if, upon their arrival at point of destination, they were not of the quality guaranteed, plaintiff was not obliged to accept the same, but might, as it did, insist repeatedly upon three cars of gasoline of the quality contracted for. In 24 R. C. L. 46, the following rule, which is supported by abundent authorities and appears to be universal, is announced:

"Where the purchaser reserves the right of inspection at another point than the place of shipment, the articles to be shipped f. o. b. at the latter place, the title to the subject-matter passes only conditionally, on delivery to the carrier, and is subject to the buyer's right to reject the articles if they do not conform to the contract." See Bower-Venus Grain Co. v. Norman Milling & Grain Co., 86 Okla. 152, 207 Pac. 297.

This, for all practical purposes, is what the trial court found, to wit: That at the point of destination it was found upon inspection that the gasoline was not of the quality contracted for.

Defendant insists the court erred in finding this a "nondelivery." We find no error in this conclusion of law. The defendant guaranted the gasoline at point of destination to be "water white," and it was "yellow," and no obligation rested upon the plaintiff to accept the same. If one orders white paint and the seller delivers yellow paint, it is true the yellow paint may cover as much surface of the house or barn, but it is not what the buyer ordered, and delivery wholly failed, and the buyer is not compelled to accept and use the yellow paint, and sue for the difference between the price of the two colors of paint. The one is wholly unfit for his purpose, and he may reject it and insist on a literal compliance with the terms of the contract.

The points here argued appear to be parallel with Pope v. Allis, 115 U. S. 363, 29 L. Ed. 393, which involved a contract for delivery of 300 tons of No. 1 extra Glengarnock (Scotch) pig iron, and 500 tons American iron, the American iron to be delivered at the furnace at Coplay, Pa., and the Scotch iron at defendant's yards in New York. The iron was shipped by water from Elizabethport, N. J., and upon its arrival at Milwaukee. Wis., the 500 tons of American iron was rejected at Milwaukee. Defendant contended that as the iron was delivered at Coplay or Elizabethport, the sale was completed thereby, and the only remedy of plaintiff was by a suit upon the warranty. Mr. Justice Woods delivered the opinion of the court and said:

"It did not appear that at the date of the contract the iron had been manufactured, and it was shown by the record that no particular iron was segregated and appropriated to the contract. * * * It was established by the verdict that the iron shipped was not of the quality required by the contract. Under these circumstances the contention of the plaintiffs in error is, that the defendant in error. although the iron shipped to him was not what he bought and could not be used in his business, was bound to keep it, and could only recover the difference in value between the iron for which he contracted and the iron which was delivered to him."

"We do not think such is the law. When the subject-matter of a sale is not in existence or not ascertained at the time of the contract. an undertaking that it shall, when existing or ascertained, possess certain qualities, is not a mere warranty, but a condition, the performance of which is precedent to any obligation upon the vendee under the contract, because the existence of those qualities being part of the description of the thing sold becomes essential to its identity, and the vendee cannot be obliged to receive and pay for a thing different from that for which he contracted. Chanter v. Hopkins, 4 M. and W. 404; Barr v. Gibson, 3 M. and W 390; Gompertz v. Bartlett, 2 E, and B. 849; Okell v Smith, 1 Stark. N. P. 86; notes to Cutter v Powell, 2 Smith Lead Cas. 37, 7th A. Ed.; Woodle v. Whitney, 23 Wis. 55; Boothby v. Scales, 27 Wis. 626; Fairfield v. Madison Mfg. Co., 38 Wis. 346. See, also, Nichol v Godetz, 10 Exch. 191."

Defendant contends plaintiff had only one of two alternatives, inconsistent remedies at its election: (1) To reject the gasoline and to recover the purchase money paid; (2) to accept the gasoline and recover the difference in value between the gasoline delivered and what its value would have been had it complied with the contract; and the exercise of the former remedy was a waiver of the latter remedy. We do not conceive this to be the law. There was a nondelivery in the case under review. The defendant contracted to deliver gasoline of a certain quality. Plaintiff may have contracted with the Waiverly Oil Works to deliver a certain quality at a certain price, and any other quality than that contracted for may not have been suitable for the needs of the Waiverly Company. If one contracts to erect a building according to plans and specifications prepared by an architect and approved by the owner, he must use the materials specified, and an inferior grade is useless. and if he has purchased materials subject to inspection and approval at the site of the proposed building, and the material dealer has guaranteed quality at destination, and the quality fails, the contractor must nevertheless complete his contract according to plans and specifications, and upon the dealer's refusal to furnish the material contracted for. he must go into the market and purchase the proper material at the lowest possible price, and the dealer with whom he has contracted will be liable for the difference, if any, in price.

In United Iron Works Co. v. Henryetta Coal & Mining Co.. 62 Okla. 99. 162 Pac. 209. this court held:

"Where personal property is sold by particular description and with special reference to specified requirements of the purchaser, the delivery of an article not answering the description nor meeting the specifications is a noncompliance with his engagement by the seller, and not a mere breach of warranty."

Benjamin on sales (7th Ed.) sec. 600. See Columbia I. W., etc.. Co. v. Douglas. 84 Md. 44, 57 Am. St. Rep. 362, 34 Atl. 1118, 33 L. R. A. 103; Webster-Gruber Marble Co. v. Dryden, 90 Iowa, 37, 57 N. W. 637, 48 Am. St. Rep. 417; 35 Cyc. 189, note 13.

"Where an article is sold according to a particular description. and the thing delivered is not according to description. it is a nonperformance of the contract upon the part of the seller. Emerson-Brantingham Imp. Co. v. Ware, 71 Okla. 19, 174 Pac. 1066; Brown v. Davidson, 42 Okla. 598, 142 Pac. 387.

For such a nonperformance the general rule appears to be that the party complaining for a breach of an extentory contract is entitled to indemnity for the loss which the nonperformance of the obligation by the other has occasioned him. and for the gain of which it has deprived him. Abe Stein Co. v. Robertson (N. Y.) 60 N. E. 329; Thompkins v. Lamb. 106 N. Y. Supp. 6; Freeman v. Clute. 3 Barb. (N. Y.) 424; Taylor v. Saxe, 134 N. Y. 67, 31 N. E. 258.

We think North Alaska Salmon Co. v. Hobbs-Wall & Co. (Cal.) 113 Pac. 870, states the proper rule where in the body of the opinion it is said:

"If he knows of the defect at the time performance is offered, he may refuse to accept the goods, insist on due performance. and sue for damages for nonperformance if further performance is not duly offered."

This is what was done in the instant case. The plaintiff evidenced no desire to rescind. the contract, but insisted upon its performance. paid for the goods in transit, and it was not until defendant definitely refused to comply with the contract, that plaintiff demanded the return of his money, went into open market and made his purchase, and brought this action for the difference in price.

In Lawton Ref. Co v. Hollister, 86 Okla. 13, 205 Pac. 506, Mr. Justice McNeill, delivering the opinion of this court, quoted with approval the rule as announced in 24 R. C. L. par. 538, as follows:

"Profits or gains prevented, as well as losses sustained, may be recovered as damages for a breach of contract, where they can be rendered reasonably certain by evidence, and have naturally resulted from the breach, and this rule is applied as to damages for breach of warranty."

It is insisted the court erred in the assessment of the amount of recovery, but the court found from the uncontroverted evidence that when the defendant refused to comply with the terms of the contract, the plaintiff was compelled to and did pay 13½ cents per gallon for 24,000 gallons of gasoline of the quality agreed to be furnished by defendant for 11½ cents, and accordingly rendered judgment for plaintiff in the sum of $480.

A careful review of the record in this case discloses no error, and the judgment of the trial court is affirmed.

By the Court: It is so ordered.